Can you please record? I'm here to report a false statement on behalf of the Principles of Color, Design, and Data Corporation. If you are an individual, you have the right to keep quiet. If you are a police officer, you have the right to remain silent. This case should be viewed by you through three separate lenses. The first is that the initial choices before you on motion for separate judges, consistent with the extent of the court below, fails to be the best and most favorable to design data. It was errored and should be reversed. The second is that a suspended attorney's job or to exhumate, constantly implements a business model here in the United States that was designed to exploit a breach in the copyright protections afforded to software developers by shifting its infringements by trying to exempt it to software overseas in an attempt to wash its hands clean of that infringement. Now, in doing so, mitigates the efforts offered by intended actors in the still-detailing software industry by offering dangerous still-detailing services here in the United States by exploiting that infringement. There are still lots of great facts in the jury. It seems to me we have two clues in this. One of them is that the mitigation policy to copyright law is only important in these files, and the other is that it operates in copyright laws when you can't copy it, and you can't borrow it, and you can't share it. One of the problems for a lawyer is you may have a nice background, but it's not the only thing you should be law-abiding when it comes to copyright law. Well, you know, in terms of the law school's focus on these two things, it's happening more and more over time, and it doesn't matter. For instance, there have been people in the UK, but they don't think this is related to the merits of the subject of the case. Well, it actually goes to interpretation of the law. And we're going to do that. You know, your honor, the business practice that occurred here and is going to be mitigated should be discouraged, but it can be done if there is the fact that this came out of law. It's the fact of the law. And you're asking if this is the case in person? Yes. Great. So to the extent that you are talking about policy, and this is part of what you're trying to do here, you're trying to explain the background of what this does. You know, if I were to say my subscriber, if you're saying that your subscriber is something wrong, that's just not the case. Right? So we can't really get to the front door. We can't get to the back door. We can't get to the front door. I sort of want you to sort of point me to the district court and downloading the program. But do you know that it's strange? You know, I'm just wondering if the district court also said, you know, it's not the right test of the standards. Right? So from a policy standpoint, it would be different if the Chinese company were here. It would be something quite different. But what we'd like the court to recognize is that in the software industry, you should talk about inside software programs. You should protect the literal and the non-literal components of that software program. Part of the agenda of that is because the creative expression that is fixed in that software code is expressed and embodied and not the core of the text. It's the creative expression. In this case, the pages should focus on the inside language. And I think if we start from the common ground, that not every component of a copyrighted program is protected in terms of copyright protection. Well, actually, I didn't worry about that. Okay. But do you agree that not every component of a copyrighted program is protected? Not every component will qualify for protection. So what is it that makes you believe it will qualify for protection in your opinion? There's an issue that I think we as consultants on the Court of Appeals consider really interesting. What is the effort of a copyrighted program in terms of copyright protection? We are aware that the outside of copyright programs have been protected for a long period of time, such as with digital displays that are outputs of a copyright program. Well, I'm not going to go into that. I'm going to try to get to the roots of the issue first of all. So tell me about the text and the source of text. It's like this is a tool. You're selling your brain. You're selling your brain to do something. And so then something is happening right here. And so what is it that you're doing? The tool is designed to generate components. It's designed to store components, right? And so the output of the functionality of the software is a component that's designed to be collected. Excuse me. How does this differ from Photoshop? If I download Photoshop from a zip, I pay for the license. I download Photoshop. I'm scrolling. I'm adding color. And I use Photoshop to take out the red eye, smooth over some wrinkles, and then I print out a photograph. Is that photograph copyright protected? Well, I would say let's know. Let's just start with the picture. Yes. I think it's protected as the person who makes the photographs The reason is because there is so much creative content that is added to the product when it comes out of the software. And the creative content is managed in the product. It's not entitled to copyright protection. But if creative content is added, then copyright protection is used in the product. I'm really, I'm going to ask a tricky question. You're asking a stupid question to a stupid person. I want to know what your proposed text is. What is your proposed text? It's in the office. Oh, I didn't realize that. What is your proposed text? You said you don't want to entitle it to copyright protection. Why is that the case? I think that certain outlets are entitled to copyrights first when you can, one, tie some sort of creative expression that's included in your output and tie it to that copy and rename it. So is there any creative expressions of work that's being pursued, creative expression, for example, where the original author is only using yours instead of having copyright protection? Probably not. So what's the answer? Well, I think that that is probably correct. I think that predominantly the expression of this work, you can say that, I believe the output would be protected to the extent that any copy of the creative expression that exists in the software that was embodied in the output. However, if there is additional creative content added to the output by a user, then if the proportionality is unbounded in two ways, you have the favor of the user included under the abstract, which the filtration test for your spouse may not have been, that's a no-no. However, if you can allow that to occur, it's going to be so complicated. And I think that's a unique piece of the case, where if you have a really great program and it's a really great tool and you charge people a lot of money to use it, and whenever they say, I'll fix the papers, then that will make a lot more sense. So can any of our other people benefit from your programs? Well, it certainly is simple, but what it doesn't do is it doesn't honor the creative expression that was practiced. You can charge people a lot of money for it, and people really want to use it. But the problem is, and in the situation with this case, we're in a situation where creative expression is added to the expression of the component design, and it is unnecessary to actually express creative expression. A visual expression that is added has been exported, copied by people outside the United States, and imported back into the country against the will, without the approval of our client, and to their customers. And to that, why should there be a difference on your end of the call of this particular campus institution? Well, because it kind of has a question. So it was a mandatory thing that they would do to get the results if they were interested in using your copyright program,  the copyright? No, no. I think they did. We obviously had license to let students, let students, they were just local bank companies that would be in commission with the product. The product would still be protected, but we're not including interpretation of it. Well, I'm not saying that the existing territory is bad. I'm saying that the focus should always be on trying to find that student's interest. And in my opinion, it's a great thing to come home and showcase the things that you're studying. There's a fourth analysis, but they seem to suggest that there may be a circumstance in which the output is so substantial, assuming that you're being approached with a copyrighted program, that it deserves copyright protection. Assuming that the text, what are your records as administrators here? In other words, what does that mean to your clients? Okay, or he says, I don't think there's a presumption of copyright that there is. We have some of the evidence here that there's a substantial similarity that would be required. And that's why we always suggest that there's a presumption. It's a burden to the institution. So, how do you come to where that evidence is? So, substantial similarity arises because when the software is loaded into the ground, I look at the program that's in here, and it's operated, and you begin to go to the slide, and you see a visual display that displays the client design, as well as the expression that emanates from the software. When you see that, that itself is a copy of the software. And then, I don't actually identify only the text that's in here. It is the text that's in here. So, when you use it, it doesn't mean that you can, like, compare different ones right now. But, if you input the same data into the software, you get the same design out of it. And that way, the expression is fixed because what happens when the component design issues, so does all of the defaults for the characteristics. And so, when you're in your identity, and the software is running, and you look at your visual screen, now, the client, you can see the expression, as you move on, it comes around. And, it means, it's a version of the copyright, and it works. It's a state-of-the-art version of the user-generated object. And, it can be used to create a work, as well as, we own the, our client owns the copyrighting software, not the computers that are used to help generate it. But, when you,            and it works. It's a state-of-the-art version of the user-generated object. And, it can be used to create a work. It's a state-of-the-art version of the user-generated object. And, it's a state-of-the-art version of the user-generated object. Now, we have a copyright, it generates the work. We have a copyright, it generates the design. In addition, we have a copyright in the unnecessary, pre-expression, pre-expression, and, and, we are not looking for a copyright, in the entire design of the component. We are looking for, in the component, that we have a copyright in the expression, and, we have to change that in the default manner. And,  I must say that I am not really going to use, I guess, if I have the possibility, a state-of-the-art copycat, as you probably imagine. Just for consistency. Now we have to define whom we want to use. Now I have a punishment, which is, that the component may not be significative. So, herein. This is perhaps, another choice. For instance, if we were to, agree with you, that what you negate, is your, constitutive, discriminatory, copyright infringement, do you need us to, investigate the issue, of, protection of the product? Yes. And, the reason is because, we actually view it as a direct infringement. And, as a direct infringement, Your Honor, because not only, did, what was the expression, manifest, in the, in the English file separately, but even if, you did agree, that that English file, was part of the non-liberal, and liberal expression of the software, it is clearly a derivative work, of, of the expression that's contained in the software. Just as much as you have, a component design with all the expressions, sitting on a video screen, and you submit to it, that would be a derivative work, that would be protected in the English file. It is, it's the same thing, it's an electronic form. And so, we do some review of it, as being direct infringement, and of course, it should be a direct infringement, if you're, does, does not serve our client's needs, and,   a, e  e e o ,   y y  y y y y y y y y y y y y y y y y y y y y r
judges: Hawkins, Callahan, Hurwitz